**CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC, d/b/a Charter Communications, Plaintiff,**

v.

**George (Jorge) RODRIGUEZ, Defendant.**

**No. CIV. 3:05CV1001(JBA).**

United States District Court, D. Connecticut.

April 7, 2006.

Award of $4020.50 in attorney fees and costs for television cable service provider was warranted, in action for unauthorized reception of cable programming in violation of the Cable Communications Policy Act; amount represented several hours of time spent by attorney, several hours of paralegal time, and filing and service costs, but did not include estimated time for post-judgment work, which was unsubstantiated. Communications Act of 1934, § 705(e)(3)(B)(iii), 47 U.S.C.A. § 605(e)(3)(B)(iii).

---

Ryan M. Mihalic, Murtha Cullina LLP, Hartford, CT, for Plaintiff.

### *Ruling on Motion for Default Judgment [Doc. # 9]*

ARTERTON, District Judge.

Plaintiff Charter Communications ("Charter"), a cable service provider, filed this lawsuit against defendant George Rodriguez ("Rodriguez"), seeking damages and injunctive relief for alleged theft of cable programming through use of four unauthorized cable signal decoder or "descrambler" devices. *See* Complaint [Doc. # 1]. Defendant failed to appear or answer the complaint, and default was entered on September 6, 2005 [Doc. # 7]. Plaintiff now moves for default judgment, which will be GRANTED IN PART and DENIED IN PART as set forth below.

### I. Factual Background

The complaint alleges the following facts, which are accepted as true for purposes of the present motion. Charter is a Delaware limited liability company with a principal place of business in Newtown, Connecticut. It provides cable service in Western Connecticut. Rodriguez subscribed to a particular level of cable programming with Charter.

Charter provides both "premium programming services, such as Home Box Office, Cinemax and Showtime, and certain Pay–Per–View channels for movies an events." Complaint ¶ 11. "Charter's signals are (a) private communications not intended for public or other use without authorization, (b) communications services offered over a cable system, and (c) satellite cable programming." *Id.* ¶ 12. These signals are coded or scrambled to prevent unauthorized viewing, and Charter provides its customers with converters to decode the signals and enable them to view that level of cable service which they have purchased. *Id.* at 13–14.

Pursuant to business records seized or produced in [another case], Charter obtained the business records of Modern Electronics, Inc. and its affiliates... in January 2004. Included in the business records seized were records of the sales of decoders, descramblers and various devices used to effect the unauthorized reception of satellite communications services and cable programming by Modern Electronics ("cable theft devices").

The business records ... indicated that the Defendant ordered and purchased

from Modern Electronics on or about January 2, 2002, February 1, 2002 and February 25, 2002 a total of four (4) separate cable theft devices. . . .

*Id.* ¶¶ 20–21. Charter alleges "[u]pon information and belief, these devices were purchased by the Defendant to be transferred or distributed to others. . . ." *Id.* ¶ 21.

The Affidavit of Mary Paul in support of the default judgment motion states that "the only purpose of an analog converter/descrambler and any device used in connection with an analog converter/descrambler, such as a 'RAMPAGE,' 'BOSS VI' or 'SCIENTIFIC ATLANTA 8580,' [such as purchased by defendant] is to descramble surreptitiously and without the consent of the subject cable system, the encrypted (or scrambled) signals of certain cable services." *See* [Doc. # 9–2] at ¶ 15.

## II. Discussion

### A. Liability

 Plaintiff argues that the allegations in the complaint are sufficient to establish defendant's liability under 47 U.S.C. § 553(a),[1] and § 605(a) and (e).[2] While the Court agrees that it is reasonable to infer that defendant has used the descrambler devices to intercept and receive Charter's signals without authorization in violation of 47 U.S.C. §§ 553(a) and 605(a) given the absence of legitimate use for such devices, the allegations in Charter's complaint are insufficient to demonstrate that defendant distributed or sold the technology to others. *See DIRECTV, Inc. v. Neznak,* 371 F.Supp.2d 130, 133 (D.Conn.2005).[3] A default is an admission of all well-pleaded allegations against the defaulting party. *See, e.g., Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir.2004). Plaintiff, however, has presented no factual basis other than defendant's mere purchase of the four devices from which to conclude that the devices were distributed or sold. Plaintiff suggests that it can be inferred that only one of the four descramblers that defendant purchased was retained for personal use, and that therefore the Court should infer that defendant distributed the three descramblers in excess of personal need. "The purchases, however, over a[two] month period, may equally suggest personal use with multiple television sets in the home, or a malfunction in an existing device." *Neznak,* 371 F.Supp.2d at 133. This case is far removed from *Cablevision Systems Corp. v. De Palma,* No.

---

**1.** Section 553(a) provides: "No person shall *intercept or receive* or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." (emphasis supplied).

**2.** Section 605(a) provides: ". . .No person not being entitled thereto shall *receive* or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

Section 605(e)(4) provides: "Any person who manufactures, assembles, modifies, imports, exports, sells, or *distributes* any electronic, mechanical, or other device or equip-

ment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation." (emphasis supplied)

**3.** *Cf. DIRECTV, Inc. v. Robson,* 420 F.3d 532 (5th Cir.2005) (declining to imply use of a cable theft device from defendant's possession of such device).

CV–87–3528, 1989 WL 8165, at *3 (E.D.N.Y. Jan. 17, 1989), in which the court inferred that the defendant sold pirate access devices after hearing evidence at a bench trial that the defendant purchased 178 converter/decoders over a two month period at a total cost of $19,143.25 from an adjudged cable pirate. Thus the Court concludes that plaintiff has established defendant's liability for unauthorized receipt or interception of cable signals, but not unauthorized distribution or sale.

The Court has been presented with insufficient allegations or evidence to support Charter's claim that defendant acted willfully. Charter's attorney billing records note that the attorney contacted defendant on several occasions before filing the present lawsuit, and from this plaintiff asks the Court to conclude that defendant failed to cooperate. However, the billing record does not indicate whether Rodriguez's response to Charter's overture was one of defiance or explanation. It is possible that he told Charter's attorney that the devices malfunctioned or that he threw them away. Charter has made no allegations concerning the whereabouts of the devices at this time.

### B. Damages and Injunctive Relief

■ Plaintiff seeks the maximum statutory damages under § 553 or § 605, or, alternatively, estimated lost revenue of approximately $12,000. The Court finds that plaintiff's claim of lost revenue is speculative, because its estimates are based on entirely hypothetical guesses as to the number of stolen television programs defendant may have viewed, and therefore the Court declines to award such damages where the statutes provides an alternative procedure.

Section 553(c)(3)(A) provides for statutory damages of $250 to $10,000 per violation, while § 605(e)(3)(C)(i) provides for statutory damages between $1,000 and $10,000 per violation. "If a defendant has violated both Section 553 and Section 605, the [c]ourt should award damages only under Section 605." Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411(DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb.7, 2006) (citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir.1993) ("If [Section 605] was violated and [the plaintiff] was aggrieved thereby, the court should grant [the plaintiff's] request for damages under § 605(e) instead of granting the lesser damages under § 553.")).

The Court finds that defendant's possession and use of four unauthorized cable descrambling devices to receive and/or intercept defendant's cable signals constitutes four separate statutory violations of § 605(a). The Court awards statutory damages in the amount of $1,500 per violation (possession of each device), for a total of $6,000.

The Court further enjoins defendant from any further violations of 47 U.S.C. § 553(a) and § 605(a). Specifically, Rodriguez, his servants, agents, employees, successors and assigned and those persons in active concert or participation with any of them, are permanently enjoined and restrained from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter, including without limitation, the following: attaching, splicing into, tampering with or in any way using cable wires of Charter for purposes of obtaining any of the programming services of Charter without Charter's authorization; manufacturing, purchasing, obtaining, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retrans-

mitting, decoding or in any way making available all or part of the programming and services of Charter without Charter's authorization; attaching or connecting any such equipment to any property of Charter without Charter's authorization; and tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, Charter's cable systems without Charter's authorization.

### C. Attorneys' Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Accordingly, the Court grants Charter's request for reasonable attorneys' fees and costs.

█ Charter seeks reimbursement of $342 for filing and serving the complaint, which costs will be allowed. Charter also has submitted attorney time and task records showing: 2.4 hours of Attorney Cohen's time, billed at $350/hour in 2004 and $360/hour in 2005; 15.9 hours of Attorney Mihalic's time billed at $150/hour in 2004 and $160/hour in 2005; and 7 hours of paralegal time billed between $75 and $140/hour. The Court finds this request reasonable with the exception of an "estimated" two hours of "post-judgment work" by Attorney Mihalic, which is unsubstantiated. Plaintiff's request for fees and costs of $4340.50 will be reduced by $320 for those two hours, for a total award of $4020.50.

### III. Conclusion

For the foregoing reasons, plaintiff Charter Communications' motion for default judgment [Doc. # 9] is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded the sum of $6,000 in damages and $4020.50 in attorneys' fees and costs against defendant George Rodriguez.

The Clerk is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED.